UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------x

ANTHONY GENTILE,

                 Plaintiff,

    -against-

JOHN E. POTTER, Postmaster General,

                 Defendant.

-------------------------------------------------x

**MEMORANDUM AND ORDER**
05-CV-1983 (ILG)

GLASSER, United States Senior District Judge:

# **INTRODUCTION**

Anthony J. Gentile ("Gentile" or "Plaintiff") brought an action against John E. Potter ("Potter" or "Defendant"), the Postmaster General, under Title VII of the Civil Rights Act of 1974, 42 U.S.C. §2000e-16, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., § 791 et seq., alleging disability discrimination and retaliation for pursuing protected activity.[1] Defendant now moves for summary judgment against Gentile pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons explained below, this Court grants Defendant's motion for summary judgment.

---

1     Gentile's affidavit in support of his opposition to summary judgment states as follows: "I respectfully request that this Court discontinue my claims for age and gender discrimination." Affidavit of Anthony Gentile in Opposition to Summary Judgment ("Gentile Aff."), dated April 26, 2007, ¶ 4. Interestingly enough, Plaintiff never alleged gender discrimination in his Complaint, but rather race discrimination. Based on Plaintiff and Defendant's submissions, it is clear to this Court that this mistake was nothing more than a scrivener's error, and the Court accordingly grants Gentile's request to discontinue both his age and race discrimination causes of action. This Court will also not consider Gentile's claims of discrimination under the Americans with Disabilities Act ("ADA") because the ADA is not applicable to federal employees. See Rivera v. Heyman, 157 F.3d 101, 103 (2d Cir. 1998) ("As a federal employee, [Plaintiff] has no remedy for employment discrimination under the ADA.") (citing 42 U.S.C. § 12111(5)(B)).

## BACKGROUND[2]

### A.    Gentile's Impairment

Gentile was hired by the United States Postal Service ("USPS") on January 19, 1983, as a multi-position letter sorting machine/ manual clerk paid at the postal pay scale level of PS 6.  See Gentile Aff. ¶¶ 5-6.  In October 1987, Gentile suffered a work-related injury that left him with a permanent impairment to his right wrist.  Id. ¶ 15. According to medical documentation, after his injury, Gentile continued to suffer from a "partial permanent disability to his right wrist and right upper extremity and according to A.M.A. Guidelines, [Gentile] has a loss of use equaling 15% of his right upper extremity."  Declaration of AUSA Catherine M. Mirabile in Support of Defendant's Motion for Summary Judgment ("Mirabile Decl."), dated March 19, 2007, Ex. F at D 0839.  Gentile self-reports that he is unable to key the letter sorting machine (a process which requires the employee to manually enter mail sorting information on a keyboard), sweep mail (a process by which an employee is required to clear mail out of overstuffed mail receptacles), lift objects over fifty pounds, and load ledges with mail.  See Mirabile Decl., Ex. KK at D 0784, Ex. D at 83:18-21.  Despite these limitations, Gentile can lift mail up to 10 lbs.  Id., Ex. KK at D 0784.  In 1994 and 1998, Gentile underwent surgery to ameliorate his condition.  See Defendant's Local Civil Rule 56.1 Statement of Undisputed Facts ("Def. 56.1 Statement"), dated March 19, 2007, ¶¶ 38-39.  After his injury in 1987, the USPS placed Gentile on limited duty through 1998.

---

2    Defendant contends that Plaintiff's 56.1 Statement is improper because it asserts facts that are contrary to Plaintiff's deposition testimony, and that it adds other facts to create factual disputes even after Plaintiff has admitted to the same facts in the 56.1 Statement.  A plaintiff may not create a factual issue to avoid summary judgment by asserting facts in his affidavit opposing summary judgment that contradict his prior deposition testimony.  Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001).  The Court will, therefore, disregard any contradictory portions of plaintiff's affidavit.  Moreover, where Plaintiff has failed to specifically controvert Defendant's assertions of material fact filed pursuant to Local Rule 56.1, the Court will deem that fact admitted.  Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998).

Gentile was required to update his medical file periodically to support a claim for injury compensation that he filed in connection with the work-related injury as well as to show that he required special accommodation from the USPS. See Gentile Aff., Ex. K at D 0529. Following the 1998 surgery, Gentile's treating physician and surgeon, Dr. Shlomo Piontkowski, saw Gentile approximately once every month, and on October 19, 1998, prepared a narrative to describe Gentile's post-operative improvement. See Mirabile Decl., Ex. F at D 0838. While Dr. Piontkowski noted that Gentile still experienced pain and discomfort which prevented him from participating in "more vigorous activities," he also explained that Gentile had self-reported that he was "not having much trouble with his particular job . . . [which was] sedentary in nature." Id.

A year later, on January 5, 1999, Dr. Piontkowski described Gentile's limitations as follows: "Partial Permanent Disability. No Loading Ledges, No Keying, No Lifting over 50 lbs Maximum Intermittently if Possible." Id., Ex. F at D 0266. Dr. Piontkowski also noted that Gentile should not lift, pull, or push items over ten pounds. See id. Dr. Piontkowski cleared Gentile to work "8 hours . . . , 40 hours per week, Overtime is possible depending on Employee's status." Id. After seeking medical attention for a further strain to his right wrist, Dr. Piontkowski listed the same general limitations and also remarked that Gentile had "reached maximum improvement." Id. at D 0841.[3]

### B.    The Rehab Job Offer

In January 1999, the USPS offered, and Gentile accepted, a Rehab clerking position pursuant to the federal employee compensation program. See id., Ex. G at D

---

3       The most updated diagnosis and synopsis of Gentile's condition appears to be Dr. Piontkowski's narrative from 1999. In response to a 2002 reassessment request from the USPS to update Gentile's medical file, Dr. Piontkowski resubmitted the 1999 narrative. See Gentile Aff., Ex. AA at D 0162-63, 0166-67. As such, the Court will assess Gentile's limitations based on this review.

0851. The job description provided that Gentile would "be assigned to the [Queens Processing & Distribution Center] operations [on] all floors, working eight (8) hours per day within [his] medical limitations. [Gentile's] main duties will include distribution of mails (letter size and flats) operation 150/30, 170/175 and all other clerical duties as needed." Id. at D 0851. Gentile's assignments were subject to the following limitations: "No use of right wrist, no use of right elbow, no keying, no loading ledges, no sweeping, maximum lifting 50 pounds, maximum pulling/ pushing 10 pounds." Id. at D 0851. Pursuant to this offer, USPS management had the right to assign Gentile to work on any floor of the postal facility so long as the duties complied with Gentile's physical limitations. Id. In August 1999, Gentile received an award from the Office of Workers' Compensation Programs for back pay relating to his injury. See id., Ex. F at D 0844.

### C.    Protected Activity

Gentile has alleged multiple counts of discrimination, dating from 1992 to the present, as well as retaliation for filing grievances and EEO complaints. The following is a summary of the EEO complaints filed by Plaintiff.

#### i.    1996 Complaints

In 1996, Gentile sought EEO counseling and filed six EEOC complaints, alleging a hostile work environment, discrimination and retaliation for filing a grievance and a worker's compensation claim. See id., Ex. Z; Gentile Aff., Ex. P. Gentile claimed, *inter alia*, that he was: (1) segregated to the second floor apart from his regular work unit; (2) denied seniority privileges for certain work assignments; and (3) improperly removed and suspended. See Gentile Aff., Ex. P. In April 1996, Gentile also filed several hazard reports alleging dangerous conditions in the workplace. See Mirabile Decl., Ex. Q.

On June 27, 1996, Gentile and the USPS entered into an EEO settlement agreement (the "Settlement Agreement") concerning Gentile's complaint that he was improperly removed from his position at the USPS.  See id., Ex. S at D 1123.  In exchange for a modification of the removal to a time served suspension, Gentile agreed to withdraw all outstanding EEO complaints and grievances.  See id.

### ii.    2002 Complaints

On January 24, 2002, Gentile initiated EEO counseling, alleging race, age, and disability discrimination, as well as retaliation for filing the 1996 EEO cases.  See id., Ex. AA.  Specifically, Gentile complained that he was:  (1) placed on Absence Without Leave ("AWOL") status for Labor Day 2001, Thanksgiving Day 2001, Christmas Day 2001, and New Year's Day 2002; (2) denied overtime from December 1992 through 2002; (3) removed from the 110 dispatch platform in 1999 and placed in an allegedly hazardous work area; (4) reclassified as an unassigned regular for two to three weeks in 2000; (5) harassed from the time of his injury in 1987 until 2002; and (6) wrongfully terminated in 1996 and wrongfully suspended in 1997.  See id.; see also Mirabile Decl., Ex. D at 209:11-21.  The complaint also realleged all claims filed in the 1996 EEO complaints. See id.  On March 27, 2002, Gentile filed his official complaint (the "2002 Complaint"). See id., Ex. CC.

Gentile also filed a grievance on October 25, 2002, because his work code was changed from Rehab clerk to short-paid Nixie clerk on his work status form.  See id., Ex. V.

### iii.    2003 Complaints

On September 2, 2003, Gentile sought EEO counseling, again claiming

discrimination and retaliation for filing his prior EEO complaints.  See id., Ex. FF.  The

Pre-Complaint Counseling form states that Gentile believed he was discriminated and

retaliated against when:  (1) his supervisor denied his second and third choice vacation

picks, including his September 2002 holiday pick; (2) he was notified on July 22, 2003,

to report back to his original assignment; and (3) his supervisor changed his break time

on July 25, 2003.  See id.  Gentile filed the formal complaint on October 30, 2003 (the

"2003 Complaint").  See id., Ex. HH.

On December 15, 2003, Gentile filed an addendum to the 2003 Complaint,

alleging retaliation for filing the Complaint based on his supervisor designating him

AWOL after he failed to work overtime on his night off before Thanksgiving.  See id., Ex.

II at D 0734.  On December 16, 2003, Gentile filed a second addendum, complaining

that he suffered retaliation when the USPS misplaced his time card for two days, forcing

him to enter his time electronically on a computer, and that later these electronic entries

were somehow erased.  See id., Ex. II at D 0737-38.  On that same day, Gentile filed

another addendum, attesting that his supervisor, acting through one of his subordinates,

instructed Gentile not to speak to his co-workers while he worked in order to "bully,

harass, retaliate, and discriminate against [Gentile] for having filed EEO complaints."

Id., Ex. II at D 0740.  Gentile filed several other addenda in which he repeated his

earlier allegations.

### iv.    EEOC Investigation

On March 1, 2004, the EEOC consolidated the 2002 and 2003 EEO complaints

for investigation, and dismissed most of the allegations as either untimely or failing to

state a claim.  See id.  The only three allegations accepted for further investigation were

the charges of AWOL, the change of Plaintiff's work location on July 22, 2003, and the change of Plaintiff's break time on July 25, 2003.  See id., Exs. DD, JJ.

On March 2, 2005, the EEOC issued its final decision dismissing the AWOL complaint and notified Gentile of his right to sue.  See id., Ex. NN.  This action was commenced on April 22, 2005.  See id., Ex. A.[4]

## DISCUSSION

### A.    Standard of Review

#### i.    Summary Judgment

Summary judgment is appropriate when there are "no genuine issues as to any material fact[s] and that the moving party is entitled to summary judgment as a matter of law."  Fed. R. Civ. P. 56 (c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).  A genuine issue exists if a reasonable jury could find in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party has the burden to demonstrate that no genuine issue of material fact exists, and the Court must draw all reasonable inferences in favor of the non-moving party.  Id. at 255.  The non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful."  D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d. Cir. 1998); see Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (explaining that a plaintiff "must provide more than conclusory allegations of discrimination to defeat a

---

4    The final EEOC decision does not address the 2003 allegations which were accepted for investigation, including the allegations that Gentile's break time was changed and that he was ordered to switch work areas due to disability discrimination and retaliation.  The record is devoid of any reference to a further EEOC decision on these counts.  Plaintiff's suit is far broader than the actions addressed in the final decision.  Because the Record is unclear as to whether the EEOC ever made a final determination regarding Plaintiff's 2003 EEO complaint, the Court will consider all of Plaintiff's timely allegations.

motion for summary judgment.").

The Court's role in a motion for summary judgment is one of "issue-finding," not "issue-resolution." <u>Gallo v. Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994).  Therefore, the Court's charge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249.

The Second Circuit applies the same summary judgment standard in employment discrimination cases. <u>See</u> <u>Morris v. City of N.Y.</u>, 153 F. Supp. 2d 494, 501 (S.D.N.Y. 2001).  Motions for summary judgment in employment discrimination actions are rarely granted because victims are "seldom able to prove [their] claim[s] by direct evidence and [are] usually constrained to rely on the cumulative weight of circumstantial evidence.  Consequently, in a Title VII action, where a defendant's intent and state of mind are placed in issue, summary judgment is ordinarily inappropriate." <u>Rosen v. Thornburgh</u>, 928 F.2d 528, 533 (2d Cir. 1991) (internal citations omitted); <u>see also</u> <u>Gallo</u>, 22 F.3d at 1224 (a "trial court must be cautious about granting summary judgment to an employer when . . . intent is at issue.").

Nonetheless, summary judgment "remains available to reject discrimination claims in cases lacking genuine issues of material fact." <u>Chambers v. TRM Copy Ctrs. Corp.</u>, 43 F.3d 29, 40 (2d Cir. 1994).  The purpose of summary judgment would be "rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir. 1985).  The Rehabilitation Act "does not erect an impenetrable barrier around the disabled employee preventing the employer from taking any employment actions vis-a-

vis the employee." <u>Arnold v. City of Appleton, Wisc.</u>, 97 F. Supp. 2d 937, 943 (E.D. Wis. 2000).[5]  Where, as in the instant case, the employment discrimination claim is grounded in the Rehabilitation Act, the plaintiff must show that he is "disabled" within the meaning of the Act as part of his *prima facie* case before intent or state of mind may be considered.  <u>See</u> <u>Reeves v. Johnson Controls World Servs.</u>, 140 F.3d 144, 149-50 (2d Cir. 1998); <u>see also</u> <u>Ryan v. Grae & Rybicki, P.C.</u>, 135 F.3d 867, 869 (2d Cir. 1998). Therefore, if a plaintiff fails to prove that he is disabled under the Rehabilitation Act, the Court "must grant summary judgment for the defendant, without considering whether there are factual questions as to discrimination or pretext."  <u>Batac v. Pavarini Constr. Co.</u>, No. 03 Civ. 9783 (PAC), 2005 U.S. Dist. LEXIS 25765, at *8 (S.D.N.Y. Oct. 27, 2005).

### ii. Burden-Shifting Analysis

Courts in the Second Circuit apply the burden-shifting analysis of Title VII employment discriminations claims set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), and its progeny to claims brought under the Rehabilitation Act.  <u>See</u> <u>Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown</u>, 294 F.3d 35, 48-49 (2d Cir. 2002).  Under this analysis, the plaintiff

> bears the initial burden of establishing a *prima facie* case under the [Rehabilitation] Act.  The burden then shifts to the employer.  If the employer asserts a neutral reason, unrelated to plaintiff's handicap, for its employment decision, then its burden is to articulate a legitimate non-discriminatory reason [for the employment decision].  The burden then shifts back to the plaintiff to

---

5       For purposes of interpretation, the Second Circuit has held that the Rehabilitation Act and the ADA impose identical requirements.  <u>See, e.g.</u>, <u>Rodriguez v. City of N.Y.</u>, 197 F.3d 611, 618 (2d Cir. 1999); <u>Trobia v. Henderson</u>, 315 F. Supp. 2d 322, 326 (W.D.N.Y. 2004); <u>Amendola v. Henderson</u>, 182 F. Supp. 2d 263, 272 (E.D.N.Y. 2001).  As such, "litigants . . . and courts interchangeably rely on case law analyzing claims brought under the ADA and the Rehabilitation Act."  <u>Trobia</u>, 315 F. Supp. 2d at 326 n.1; <u>see also</u> <u>Lipka v. Potter</u>, 03CV381A, 2006 U.S. Dist. LEXIS 22960, at *8 n.3 (W.D.N.Y. Mar. 28, 2006) (same).

show that the employer's stated reason is really a pretext for discrimination. Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 722 (2d Cir. 1994) (internal citation and quote omitted). Retaliation claims are subject to the same McDonnell Douglass burden-shifting analysis as discrimination claims. See Avillan v. Potter, 04 Civ. 9019 (PKC) (FM), 2006 U.S. Dist. LEXIS 80062, at *52-53 (S.D.N.Y. Nov. 1, 2006).

## B.    Settlement

The doctrine of *res judicata* precludes parties from relitigating issues raised in a previous action where there is a final judgment on the merits. See White v. United States Postal Serv., 04 CV 0602 (SJ), 2005 U.S. Dist. LEXIS 6067, at *6 (E.D.N.Y. Feb. 16, 2005) (citing Rivet v. Regions Bank of La., 522 U.S. 470, 476 (1998)). The doctrine of *res judicata* also applies to settlement agreements in the context of disability discrimination. See Greenberg v. Bd. of Governors of Fed. Reserve Sys., 968 F.2d 164, 168 (2d Cir. 1992); Rivera-Flores v. Bristol-Myers Squibb Caribbean, 112 F.3d 9, 12 (1st Cir. 1997). The "protection Congress wished to afford to disabled workers is consistent . . . with permitting those workers to resolve their claims by executing a release in exchange for benefits they would not otherwise receive." Rivera-Flores, 112 F.3d at 12 (explaining that the ADA "clearly encourages private resolution of employment disputes, such as by requiring that employers attempt to make reasonable accommodations and that the EEOC try to settle disputes informally."). These protections extend to Title VII retaliation claims as well. See Torrez v. Pub. Serv. Co. of N.M., 908 F.2d 687, 689 (10th Cir. 1990) ("Both Title VII and section 1981 employment discrimination claims may be waived by agreement . . . .").

In such cases, the "preclusive effect of a settlement is measured by the intent of

the parties to the settlement, which is to be determined from the language of the agreement itself." White, 2005 U.S. Dist. LEXIS 6067, at *7. Where the language of a settlement agreement is unambiguous, courts may find that the parties intended the agreement to be a final settlement of all liability. See id. Here, the Settlement Agreement clearly states: "[T]he complainant agrees to withdraw EEO complaints numbers 1A 111 104896 and 1A 111 1049 96 . . . and any and all outstanding grievances on these issues." Mirabile Decl., Ex. Y. The Settlement Agreement unambiguously informs Gentile of the effect of signing the agreement and releasing these claims: "I fully understand that by agreeing to this settlement, I waive my rights to any further appeal of my allegations(s) through the EEO process. I further state that this agreement did not result from harassment, threats, coercion or intimidation. I am fully aware that any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process is binding on both parties." Id.

Gentile does not contest that the relitigation of his settled claims is barred by the preclusive effect of the Settlement Agreement. Nor does he contend that the Settlement Agreement was somehow invalid or procured through coercive means. Accordingly, this Court finds that the Settlement Agreement bars relitigation of Gentile's claims brought pursuant to any grievances or official EEO complaints that he filed before June 27, 1996.[6]

---

6       Alternatively, the "withdrawal of [Plaintiff's] EEO complaint must be considered as a waiver of any underlying discrimination claims." Littlejohn v. Henderson, 01-CV-2772 (JG), 2003 U.S. Dist LEXIS 12889, at *8 (E.D.N.Y. June 19, 2003). See also Baber v. Runyon, 97 Civ. 4798 (DLC), 1998 U.S. Dist. LEXIS 20233, at *15 (S.D.N.Y. Dec. 28, 1998) ("Although not yet addressed by the Second Circuit, courts considering whether a plaintiff who withdraws an administrative complaint has exhausted administrative remedies have concluded that the withdrawal constitutes a failure to exhaust administrative remedies." (citations omitted)).

## C.       Failure to Exhaust Administrative Remedies

A plaintiff who alleges discrimination and retaliation under the Rehabilitation Act or Title VII must exhaust his administrative remedies within a specified time frame before he may file a complaint in federal court.  See Briones v. Runyon, 101 F.3d 287, 289-90 (2d Cir. 1996) (failure to bring a Title VII claim within required time period "ordinarily . . . preclude[s] a plaintiff from pursuing a discrimination claim in federal court"); Jordan v. Potter, 05-CV-3005 (SJF) (ETB), 2007 U.S. Dist. LEXIS 23085, at *10-11 (E.D.N.Y. Mar. 29, 2007) ("A federal employee seeking relief for disability discrimination under the Rehabilitation Act must follow the procedures set forth under Title VII . . . [and t]hus, a federal employee must exhaust certain administrative remedies . . . .").  The EEOC regulations require that a federal employee consult with a counselor at the employer agency's EEO office within forty-five days of the allegedly discriminatory or retaliatory act.  See 29 C.F.R. § 1614.105(a)(1).  If the matter cannot be resolved after the employee is counseled, then the employee must file a formal written complaint with the EEO within 15 days of receiving notice of the failure to resolve the claim.  See 29 C.F.R. §§ 1614.105(d), 1614.106(a).  The employee may not commence suit in federal court until the EEO has completed its investigation and issues a right to sue letter.  See 29 C.F.R. § 1614.407.

Failure to comply with these deadlines renders a claim time-barred, unless the claim is subject to equitable tolling.  See Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001) ("The 45-day period serves as a statute of limitations; thus, as a general rule, claims alleging conduct that occurred more than 45 days prior to the employee's initiation of administrative review are time-barred.").  The Supreme Court advocates

that "in the context of a request to alter the timely filing requirements of Title VII," "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" <u>AMTRAK v. Morgan</u>, 536 U.S. 101, 108 (2002) (quoting <u>Mohasco Corp. v. Silver</u>, 447 U.S. 807, 826 (1980)). The timing requirements, "though not jurisdictional, 'are not to be disregarded by courts out of a vague sympathy for particular litigants.'" <u>Lucenti v. Potter</u>, 432 F. Supp. 2d 347, 357 (S.D.N.Y. 2006) (quoting <u>Baldwin County Welcome Ctr. v. Brown</u>, 466 U.S. 147, 152 (1984)).

Gentile initiated EEO counseling for the 2002 Complaint on January 24, 2002. This means that any claims now subject to judicial review must have accrued no longer than forty-five days prior to January 24th. Therefore, any claims for the denial of overtime occurring before December 9, 2001, are time-barred. The Labor Day and Thanksgiving Day AWOLs are also time-barred because they occurred before December 9th. Additionally, the claim that Gentile's supervisor denied him his September 2002 vacation choice is time-barred because Gentile did not initiate EEO counseling on this claim until September 2003, over a year after the denial.

Indeed, any claims arising from the fourteen day suspension in 1997 is time-barred because Gentile failed to initiate EEO counseling for nearly five years. Gentile's claims that he was removed from the 110 dispatch platform in 1999, and that his work status briefly changed to that of "unassigned regular" in 2000, are time-barred for the same reason.

### D. The Continuing Violation Doctrine

Gentile argues that this Court should apply the continuing violation doctrine to

permit recovery for discrimination and retaliation that occurred outside the limitations period because the alleged discriminatory and retaliatory acts were part of "discriminatory policies or procedures" that Defendant permitted to exist.  See Pl. Br. at 14-19.  The Court rejects this proposition.

As a "general matter, the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loathe to apply it absent a showing of compelling circumstances."  Trinidad v. N.Y. City Dep't of Corr., 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) (quotation omitted).  Prior to 2002, the continuing violation doctrine permitted recovery for the purposes proposed by Plaintiff.  See generally Henderson, 251 F.3d at 359.  However, the Supreme Court severely curtailed the application of the doctrine in AMTRAK v. Morgan, 536 U.S. 101 (2002).  The Court explained that "by choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination."  Id. at 109 (quoting Mohasco Corp., 447 U.S. at 825).  Because the term "practice" has been "repeatedly interpreted [by the Court] . . . to apply to a discrete act or single 'occurrence,' even when it has a connection to other acts," the Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."  Id. at 111, 113.  As such, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'  [Defendants] can only file [charges] to cover discrete acts that 'occurred' within the appropriate time period."  Id. at 114.[7]

---

7       The Court distinguished Title VII hostile work environment claims as claims that by "[t]heir very nature involve[] repeated conduct [that] . . . cannot be said to occur on any particular day."  Id. at 115.  Thus, the continuing violation doctrine still applies to allegations of hostile work environment that occur

Each denial of overtime was a discrete act that is now time-barred.  Similarly, the

denial of the September 2002 holiday choice, the Labor Day and Thanksgiving Day

AWOLs, the removal from the 110 dispatch area, the 1999 change in work status, and

the 1996/1997 removal and suspension were all discrete acts.  Alleging that these acts

are part of a larger scheme or practice of discrimination or retaliation does not save

them from the limitations period.  Courts in this Circuit "consistently reject[] attempts

[on motions for summary judgment] to save otherwise time-barred claims by conclusory

allegations that a series of related discrete acts constitute[] a pattern or practice."

Mirasol v. Gutierrez, 05 Civ. 6368 (DC), 2006 U.S. Dist. LEXIS 16465, at *14 (S.D.N.Y.

Apr. 5, 2006) (collecting cases).

### E.    Disability Discrimination Under the Rehabilitation Act

The Rehabilitation Act provides in relevant part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

To establish a *prima facie* case under the Rehabilitation Act, a plaintiff must

show:  (1) he is handicapped or disabled under the Act; (2) he is otherwise qualified to

perform his job; (3) he suffered an adverse employment action solely due to his

disability; and (4) the employer is a recipient of Federal financial assistance.  See

---

outside of the statutory period and are related to timely claims.  Gentile did not allege a hostile work environment in relation to his claims of disability discrimination or retaliation.  Instead, Gentile alleged that he was subjected to a hostile work environment on account of his race.  Because Gentile voluntarily discontinued his claims for race discrimination under Title VII, his hostile work environment claim cannot stand as a basis to save his otherwise time-barred allegations.

Heilweil, 32 F.3d at 722; Burke v. Evans, No. 06-1917-cv, 2007 U.S. App. LEXIS 13561, at *3 (2d Cir. June 8, 2007).  Plaintiff has failed to meet this burden because he is not disabled within the meaning of the Rehabilitation Act.

### i.  "Disabled" Within the Meaning of the Rehabilitation Act

The Rehabilitation Act defines a disabled person as one who "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment."  29 U.S.C. § 705(20)(B).  In evaluating disability, courts follow the three-step process set forth by the Supreme Court in Bragdon v. Abbott to determine:  (1) whether plaintiff had an impairment; (2) whether the impairment affected a "major life activity" within the meaning of the Rehabilitation Act; and (3) whether the impairment substantially limited the major life activity.  See Trobia, 315 F. Supp. 2d at 326-27 (citing Bragdon v. Abbott, 524 U.S. 624, 631 (1998)).  Therefore, "[m]erely having an impairment does not make one disabled . . . ."  Toyota Motor Mfg., Ky. Inc. v. Williams, 534 U.S. 184, 195 (2002).

As a threshold matter, the plaintiff bears the burden of demonstrating that his disability fits into the narrow definition envisioned by the Rehabilitation Act.  The impairment must "*substantially*" limit one of the major life activities such that the "impairment must be significant, and not merely trivial."  Reeves, 140 F.3d at 151 (quotation omitted) (alteration in original); see also Ryan, 135 F.3d at 870 ("[I]n assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities.").  Factors taken into consideration pursuant to the substantial

16

limitation calculus include: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; [and] (3) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." Boyce v. N.Y. City Missions Soc'y, 963 F. Supp. 290, 296 (S.D.N.Y. 1997) (citing 29 C.F.R. § 1630.2(j)(2)).[8]

According to definitions supplied by the Act, the major life activities that fall within the ambit of the Rehabilitation Act are "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii). The Second Circuit has expanded this list to include other major life activities such as sitting, standing, lifting, and reaching. See Ryan, 135 F.3d at 870; Colwell, 158 F.3d at 642. To prove a substantial limitation on the major life activity of working, a plaintiff must show that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i); Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 523 (1999). The "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).

Nowhere in his pleadings does Gentile identify which major life activity is affected by his impairment, "a reason in and of itself supporting dismissal . . . ." Amendola, 182 F. Supp. 2d at 274. However, based on the record as a whole, this Court will consider whether Gentile's impairment substantially limited him in the major life

---

8    "Because the Rehabilitation Act regulations provide no guidance, courts look to the EEOC's regulations implementing the ADA to determine whether an activity is substantially limited." Trobia, 315 F. Supp. 2d at 328 (citing Colwell v. Suffolk Co. Police Dep't, 158 F.3d 635, 643 (2d Cir. 1998)).

activities of working and lifting. The medical documentation offered by Gentile shows that he suffers from a limiting impairment to his right wrist. However, evidence of impairment alone does not establish disability. See, e.g., Batac v. Pavarini Constr. Co., 216 Fed. Appx. 58, 60 (2d Cir. 2007). To assess whether the impairment substantially limited Gentile, the Court must take into account how his impairment affected his ability to work or lift.

Gentile's original job at the post office categorized him as a letter sorting machine clerk. This job required him to key the machine and lift mail, functions that were restricted by his limitations. The USPS placed Gentile on limited duty until 1998, and then in 1999 offered him a job to accommodate his restrictions. This job allowed him to function as a modified letter sorting clerk. Specifically, he sorted mail manually and performed clerical work, all within the following limitations: "No use of right wrist, no use of right elbow, no keying, no loading ledges, no sweeping, maximum lifting 50 pounds, maximum pulling/ pushing 10 pounds." Ex. G at D 0851. Gentile informed his treating physician that he was "not having much trouble with his particular job . . . [which was] sedentary in nature." Id. at D 0838. Therefore, this Court is hard-pressed to find that Gentile was limited in his ability to perform his own job, far from being substantially limited in his ability to perform a broad range of jobs. Therefore, Gentile's impairment did not substantially impair his ability to work.

Similarly, Gentile has not presented sufficient evidence to raise a question of material fact regarding his ability to lift. Dr. Piontkowski found that Gentile should not lift any items in excess of fifty pounds, but could on a regular basis lift objects weighing ten pounds. See id., Ex. F at D 0266. Gentile also testified that he can lift objects up to

ten pounds.  See id., Ex. KK at D 0784.  Gentile's lifting restrictions do not constitute a disability under the ADA because the inability to lift over fifty pounds is not a substantial limitation.  See Taylor v. Lenox Hill Hosp., 00 Civ. 3773 (GEL), 2003 U.S. Dist. LEXIS 5429, at *14 (S.D.N.Y. Apr. 2, 2003) ("[T]he inability to lift over forty pounds is not a substantial limitation.  Since the average person in the general population may not be able to lift forty pounds or more, [plaintiff]'s lifting ability is not substantially restricted in relation to that of most people."); Strassberg v. Hilton Hotels Corp., 95 Civ. 6235 (LLS), 1997 U.S. Dist. LEXIS 12916, at *6 (S.D.N.Y. Aug. 26, 1997) (finding that inability to lift thirty pounds is not an "actual disability" under the ADA). Even viewed in the light most favorable to Plaintiff, his inability to lift more than ten pounds on a regular basis would not constitute a substantial limitation.  See Cortes v. Sky Chefs, Inc., 67 Fed. Appx. 66, 68 (2d Cir. 2003) (affirming district court's grant of summary judgment because plaintiff had not established that his "inability to lift more than ten pounds [was] . . .  a substantial limitation on a major life activity within the meaning of the ADA").  Therefore, during the relevant time period, Gentile was not substantially limited in the major life activity of lifting.

### ii.      "Regarded as Having" an Impairment

In the alternative, Gentile argues that even if he did not have a disability within the meaning of the Rehabilitation Act, he was "regarded" as disabled by his employers. A person is "regarded as having" an impairment if he:  "(1) [h]as a physical or mental impairment that does not substantially limit major life activities but is treated by [an employer] as constituting such limitation; (2) [h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others

toward such impairment; or (3) [h]as none of the impairments . . . but is treated by [an employer] as having a substantially limiting impairment."  29 C.F.R. § 1630.2(l).

"[M]any impairments do not impact an individual's life to the degree that they constitute disabling impairments."  Redlich v. Albany Law Sch. of Union Univ., 899 F. Supp. 100, 107 (N.D.N.Y. 1995) (quotation omitted).  Whether an individual is regarded as having a disability "turns on the employer's perception of the employee and is therefore a question of intent, not whether the employee has a disability."  Colwell, 158 F.3d at 646 (citation and internal quotes omitted).  However, "an employer's belief that an employee is unable to perform one task with an adequate safety margin does not establish per se that the employer regards the employee as having a substantial limitation on his ability to work in general."  Redlich, 899 F. Supp. at 107 (quotation omitted).  Plaintiff must therefore prove that his employer regarded him as disabled under the Rehabilitation Act, i.e., that Plaintiff's supervisors perceived him as substantially limited in the major life activities of working or lifting.  Reeves, 140 F.3d at 153.  The fact that a plaintiff's job responsibilities have been restricted does not "permit the inference" that he is substantially limited in his ability to work.  See Colwell, 158 F.3d at 647.  Plaintiff still bears the burden of proving that his supervisors "'perceived [him] to be incapable of working in a broad range of jobs' suitable for persons of [his] age, experience, and training."  Id. (quoting Ryan, 135 F. 3d at 872).

There is not a scintilla of evidence in the record to support Gentile's contention that his supervisor during the relevant time period, Michael Montforte, regarded him as disabled.  When questioned at deposition whether Montforte had ever made any derogatory remark to Gentile regarding his limitations, Gentile replied, "Only his lack of

knowledge that I am a rehab and limited and what my limitations are." Declaration of David G. Gabor ("Gabor Decl."), dated April 26, 2007, Ex. D at 196:4-6. There is nothing in the pages of testimony from Montforte's deposition to suggest that he regarded Gentile as disabled.

Montforte did testify that he was aware that Gentile had filed grievances and EEO complaints against him. One inference to be drawn from this recognition is that Montforte was aware that Gentile claimed to be disabled. However, any general awareness that Gentile suffered from impaired ability is inconsequential. Mere knowledge is insufficient to prove "either that the employer regarded the employee as disabled or that the perception caused the adverse employment action." See Reeves, 140 F.3d at 153 (quotation omitted).

Drawing all reasonable inferences in favor of Gentile, this Court does not find that Gentile was either regarded as substantially limited in his abilities to work or lift or that he actually was substantially limited. Because Gentile has failed to establish a *prima facie* case of disability under the Rehabilitation Act, this Court dismisses all of Gentile's claims arising under that Act.

### F.     Gentile's Retaliation Claim

Section 704(a) of Title VII prohibits an employer from discriminating "against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this [subchapter], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [subchapter]." 42 U.S.C. § 2000(e)-3(a). This anti-retaliation provision "seeks to prevent employer interference with unfettered access to

Title VII's remedial mechanisms.  It does so by prohibiting employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers."  <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 126 S. Ct. 2405, 2415 (2006).  To state a claim for retaliation, a plaintiff must establish a *prima facie* case consisting of the following four elements:  "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action."  <u>Weixel v. Bd. of Educ. of the City of N.Y.</u>, 287 F.3d 138, 148 (2d Cir. 2002) (quotation omitted).

Adverse employment actions in the context of a retaliation claim cover a broader range of conduct than in the discrimination context.  <u>Burlington</u>, 126 S. Ct. at 2415.  A plaintiff must show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  <u>Id.</u> (quotation omitted).  The standard is an objective one, and does not require the court to consider the nature of the discriminatory act leading to the filing of a grievance or complaint.  <u>See</u> <u>Gustin v. Potter</u>, 474 F. Supp. 2d 460, 464 (W.D.N.Y. 2007).  Rather, "the standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint."  <u>Burlington</u>, 126 S.Ct. at 2416.  Title VII does not protect individuals from all retaliation, just from retaliation "that produces an injury or harm."  <u>Id.</u> at 2414.

"To be 'materially adverse,' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.  A

materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (internal citation and quotes omitted).  However, "not every unpleasant matter short of discharge or demotion constitutes an adverse action under Title VII." Delgado v. Triborough Bridge and Tunnel Auth., 485 F. Supp. 2d 453, 461 (S.D.N.Y. 2007); see Burlington, 126 S. Ct. at 2415 ("[N]ormal petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." (internal citations and quotations omitted)).

Most of the acts of retaliation alleged by Gentile are not materially adverse. Rather, they are "mostly minor actions taken by his supervisor, which he ascribes in a conclusory fashion to retaliation." Gustin v. Potter, 474 F. Supp. 2d 460, 464 (W.D.N.Y. 2007).

### i.    Break Change

Gentile alleges that on July 25, 2003, his break time was changed from 5:30 a.m. to 5:00 a.m.  In the first instance, this action cannot be retaliatory because it occurred before Gentile filed the 2003 Complaint, and four months after he filed the 2002 Complaint.  See Amendola, 182 F. Supp. 2d at 277-78 (failing to find causal connection between the denial of overtime and the filing of EEO complaint because "a defendant's retaliatory action cannot take place before plaintiff engaged in a protected activity . . . ." (quotation omitted)); Nicastro v. Runyan, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) ("Claims of retaliation are routinely dismissed when as few as three months elapse

between the protected EEO activity and alleged act of retaliation"); <u>Clarke County Sch.</u> <u>Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that temporal proximity must be 'very close.'").[9]

Even if there had been a protected activity for which Gentile's supervisor retaliated, the change in break time does not constitute a materially adverse change in employment. Receiving unfavorable schedules is not a materially adverse employment action. See <u>Katz v. Beth Isr. Med. Ctr.</u>, 95 Civ. 7183 (AGS), 2001 U.S. Dist. LEXIS 29, at *44 ("Being yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments . . . do not rise to the level of adverse employment actions; they do not affect any ultimate employment decisions."). Therefore, Gentile cannot establish a *prima facie* case of retaliation for this claim.

### ii. Work Code Change

Gentile also alleges that his work codes on his work status form were "mysteriously" changed and that he was forced to file a grievance on October 18, 2002, concerning this activity. Again, as stated above, there is no protected activity occurring before 2002 with which to link any alleged retaliation. Gentile claims that the changes were an attempt by his supervisor to undermine his future position at the post office

---

9  Temporal proximity is a form of indirect evidence of retaliation. Plaintiff has not proffered any direct evidence, or any other valid indirect evidence. Plaintiff attempted to establish that he received disparate treatment in comparison to his co-workers with regards to the allocation of overtime. However, no inference of discrimination can be drawn from any of the evidence set forth by Plaintiff. Though Gentile claimed that other Rehab workers were permitted to work overtime, it is clear that based on the evidence provided by Defendant – details regarding a settled grievance filed by the American Postal Workers Union ("APWU") against USPS management – that Rehab employees were not permitted to work overtime based on USPS policy. See Mirabile Decl., Exs. VV, RR, and XX.

because it would force him to redocument his prior compensation claim in order to inform any future supervisor of his physical limitations. <u>See</u> Mirabile Decl., Ex. D at 203:8-18. However, Gentile admits that these changes of code, which were later corrected, did not affect his salary, benefits, vacation and leave time, or his job assignments, and that he never had to redocument his injury compensation claim. <u>Id.</u> at 201:3-206:17. None of these acts constitute material adverse employment actions because they did not affect any privileges or duties of employment. Therefore, this claim is dismissed as well.[10]

### iii.    AWOL Charge

The Christmas 2001 and New Years 2002 charges of AWOL cannot constitute retaliatory action because they all occurred before any protected activity took place – Gentile's filing of his March 27, 2002 EEO complaint. <u>See Amendola</u>, 182 F. Supp. 2d at 277-78. Additionally, according to Gentile's pay records, he was compensated for the Christmas holiday. Gentile has not claimed that he suffered a loss of status due to the charge of AWOL. Accordingly, the Christmas AWOL charge of retaliation is dismissed because it is not a materially adverse event.

Gentile also alleges that Montforte placed him on AWOL status for the New Year's Day holiday after Gentile, upon Montforte's request, provided Montforte with documentation to prove that he was a Rehab employee. Requiring an employee to provide medical documentation is not a materially adverse action. <u>See Nicastro</u>, 60 F.

---

10      Gentile also claimed that various persons at the USPS delayed his injury compensation claims. Gentile did not provide specific dates or details about these occurrences, but made out general accusations. Gentile was ultimately rewarded compensation. However, to the extent that he claims that the delay constituted a material adverse action, he is misguided. Any effort to deny a plaintiff benefits is not an adverse employment action. <u>Trigg v. N.Y. City Transit Auth.</u>, 99-CV-4730 (ILG), 2001 U.S. Dist. LEXIS 10825, at *30 (E.D.N.Y. July 26, 2001) (Glasser, J.).

Supp. 2d at 186 ("[M]any of the actions complained of by plaintiff, such as scrutiny from his supervisors that he deemed excessive, requiring documentation for sick leave, . . . the unexplained absence of certain documents that he thinks should be in his employment file . . . do not constitute 'adverse employment actions . . . .'").

Even if Gentile could establish a *prima facie* case of retaliation, the USPS has offered a legitimate, non-discriminatory explanation for the charge of AWOL: that if any employee fails to report as scheduled, management may take corrective action, including a charge of AWOL, for failure to report. <u>See</u> Mirabile Decl., Ex. LL at D 0804. This explanation applies to the 2003 Thanksgiving AWOL charge despite the fact that he was not supposed to work that night. <u>See</u> <u>Trigg</u>, 2001 U.S. Dist. LEXIS 10825, at *32 ("That the Transit Authority labeled [Plaintiff]'s absences . . . as "without leave" is an accurate reflection of his status, not a retaliatory act. In sum, the allegation that the Transit Authority withdrew previously authorized leave is unsubstantiated, and as such cannot constitute an adverse employment action."). Gentile has not shown this explanation to be pretextual, and thus his claims relating to the AWOLs are dismissed.

### iv. Denial of Overtime Between December 9, 2001 and January 24, 2002

While the denial of overtime is a materially adverse action, Plaintiff fails to connect the denial of overtime on any individual occasion with protected activity.[11] Again, the denial of overtime occurred before Gentile filed the 2002 Complaint. Even if

---

11       The only proof offered by Plaintiff in support of the retaliation is a hearsay statement from an EEO advocate who worked at the post office who stated that "[i]t was made clear to me that Mr. Gentile would never be allowed to work overtime due to his disability and his prior filing of EEO charges. This was told to me by Maud Wright, my supervisor and by Geral Terner, the Tour Superintendent." Gabor Decl., Ex. E ¶ 11. The Court will not accord any weight to this statement.

Gentile could support a *prima facie* case on this claim, Defendant has offered a legitimate, non-discriminatory explanation for the denial of Gentile's request to work overtime. As a Rehab employee, Gentile was not eligible to work overtime. Prior to December 9, 2001, the USPS adopted a policy of disallowing overtime to non-bid employees. As explained by The Local Agreement between the Flushing Post Office Queens Processing & Distribution Center and APWU Local #2286, overtime is distributed by the employee's work section on a "skills required basis" and was not available to non-bid employees (which includes Rehab employees). See Mirabile Decl., Ex. UU. Therefore, Gentile would not have been eligible for overtime distributed in this manner.[12] Moreover, as Gentile's former supervisor testified, the needs of management were usually fulfilled before management could turn to a general overtime desired list in which non-bid employees were entitled to participate. Gentile has not proffered any evidence to support the contention that managers used this list of employees who desired overtime between December 9, 2001, and January 24, 2002. Because Plaintiff has not submitted any evidence that he was denied any overtime during this period other than his own conclusory statements that he was otherwise eligible, his claims for denial of overtime are dismissed.

### v.  Other Non-Materially Adverse Actions

Plaintiff's remaining complaints are likewise dismissed because they do not

---

12    Even if Gentile had not been categorized as a non-bid employee and could have been considered for overtime, his ability to serve overtime on a particular day would still have depended on the needs of management. Elmer Rothwell, one of Gentile's supervisors, testified that Gentile would have been qualified to be considered for overtime within his section only if he could perform the duties required of his section, which included working the letter sorting machine. This required keying and sweeping the mail – skills that Gentile could not perform and for which reason he was accommodated as a Rehab employee with special limitations. See Ex. B at 28:7-29:3, 46:18-24.

constitute materially adverse actions.  The change of Gentile's work location back to the 110 dispatch area on July 22, 2003, is not a materially adverse action because the changing of location did not affect his pay, advancement opportunities, or job assignments.  The deletion of time entries on Gentile's work card also does not constitute an adverse employment action because the USPS was able to rectify the situation and pay Gentile for the hours that he worked.  <u>See</u> Mirabile Decl., Ex. D at 228:24-229:15.  Any other act that Gentile has categorized as general harassment, such as the order from his supervisor not to speak to his co-workers while he completes his tasks, is not materially adverse because "[r]eprimands, threats of disciplinary action, and excessive scrutiny do not constitute adverse employment actions."  <u>Lucenti</u>, 432 F. Supp. 2d at 364.  Accordingly, the remainder of Plaintiff's claims are dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court grants Defendant's motion for summary judgment and dismisses Plaintiff's claims.  The Clerk of the Court is hereby directed to enter judgment in favor of Defendant and to close the above-captioned action.

SO ORDERED.

Dated:  Brooklyn, New York
    September 6, 2007

_____/s/_____
I. Leo Glasser
United States Senior District Judge

Copies of the foregoing memorandum and order were electronically sent to:

Counsel for the Plaintiff
David G. Gabor, Esq.

Gabor & Gabor
400 Garden City Plaza, Suite 406
Garden City, NY 11530

Counsel for the Government
Catherine M. Mirabile, Esq.

Assistant United States Attorney for the Eastern District of New York
One Pierrepont Plaza, 14th Floor
Brooklyn, NY 11201